**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| DONNELL M. TAYLOR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br>    Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | CIVIL NO. 3:10CV382 |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Donnell M. Taylor, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his request to waive the recovery of the overpayment of Social Security Disability ("DIB") payments. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 13) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these s, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 16) be GRANTED; and that the final decision of the Commissioner be AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and was granted such on May 15, 1995. (R. at 14.) Plaintiff subsequently returned to the workforce, and his nine-month trial work period ended in September 2000. (R. at 40, 43-47.) On May 31, 2005, the Social Security Administration ("SSA") notified Plaintiff that he had been overpaid DIB benefits between August 2001 and June 2002, and between August 2002 and December 2004, based upon work activity that was "substantial gainful activity" ("SGA"). (R. at 40-43.) After receiving notification of the overpayment, Plaintiff attended a conference at a local SSA office to request that recovery of the overpayment be waived. (R. at 33-34.) The waiver request was expedited for a hearing before an ALJ. (R. at 20-23, 25, 78-79.) On October 30, 2007, Plaintiff, after declining the assistance of counsel, testified before an ALJ. (R. at 77-101.) On November 28, 2007, the ALJ found that Plaintiff had been overpaid DIB between August 2001 and June 2002, and between August 2002 and December 2004, and that he was not without fault in causing or accepting the overpayment. (R. at 14-17.) Plaintiff's request for a waiver of recovery of the overpayment was thereby denied. (R. at 14-17.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 5-8.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff was overpaid DIB between August 2001 and June 2002, and between August 2002 and December 2004, such that Plaintiff was not entitled to

a waiver of recovery of the overpayment supported by substantial evidence on the record and the application of the correct legal standard?

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

An individual receiving Social Security benefits has the option to attempt a return to the workforce pursuant to 20 C.F.R. § 404.1592. Pursuant to the regulation, a "trial work period" is a nine-month period during which a claimant can evaluate his ability to work while still being considered disabled, thereby entitled to continue receiving Social Security payments. During the period, a claimant may engage in employment that results in earnings of at least $200.00 per month, for a period of up to nine months (that do not have to be consecutive), and such employment will not result in the termination of disability benefits. Following the expiration of the trial work period, the SSA considers whether the work performed during the trial work period renders the claimant not disabled. Thereafter, a claimant can continue to test his ability to work, if he has a disabling impairment, during a re-entitlement period of an additional thirty-six months. 20 C.F.R. § 404.1592a. However, during the re-entitlement period, a claimant is not paid benefits for any month after the third month of the period in which he performs SGA. At the same time, a claimant will be paid benefits for the months in which he does not perform SGA.

If a claimant returns to the workforce while still receiving Social Security payments, and it is determined that the claimant was overpaid Social Security benefits as a result, then the SSA must determine whether the claimant was "at fault" in causing the overpayment. "Fault" can be demonstrated in any of three ways. First, fault is established if the claimant made a statement which he knew, or should have known, was incorrect; second, fault can be established if the claimant failed to furnish information which he knew, or should have known, to be material; and third, fault is established if the claimant accepted payments which he knew, or could have been expected to know, were incorrect. 20 C.F.R. § 404.507. If the claimant is without fault in causing an overpayment, and if adjustment or recovery would either defeat any purpose of the

Act, or otherwise be against equity and good conscience, then the claimant can obtain a waiver of adjustment or recovery of the overpayment. 20 C.F.R. § 404.506.

## IV. ANALYSIS

The ALJ found that Plaintiff was overpaid DIB in the amount of $34,854.00 between August 2001 and June 2002, and between August 2002 and December 2004. (R. at 14-17.) The ALJ also found that the SSA correctly calculated the amount of overpayment, and that Plaintiff was not without fault in causing or accepting the overpayment. (R. at 16-17.) Accordingly, the ALJ concluded that recovery of the overpayment could not be waived. (R. at 17.)

Plaintiff, who proceeds *pro se*, moves for a finding that he is entitled to a waiver of recovery of the overpayment as a matter of law. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that he reported his earnings to the SSA, and that he was misled by the SSA with regards to participating in the workforce while receiving Social Security payments. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 1-2) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 4-8.)

### A.  Substantial evidence supports the ALJ's decision that Plaintiff is not entitled to a waiver of recovery of the overpayment of DIB.

Plaintiff asserts that he was not at fault in causing the overpayment of benefits. He specifically contends that he correctly reported all of his employment, and that there must have been a system error if his occupations were not properly recorded. Plaintiff also asserts that his job history and record "speaks for itself," as well as a check he voluntarily returned to the SSA that he believed he was not entitled to receive. Plaintiff further argues that he was misled by a

5

SSA representative as to his employability and that he should not be held responsible for the errors of others.

Initially, the Court notes that Plaintiff has raised the issue of the benefits check he returned to the SSA at some point in time, and that the ALJ did not properly consider such. However, the issue was subsequently addressed and resolved by the Appeals Council. (R. at 5-8.) The Appeals Council specifically noted that it was unsure what records the ALJ reviewed when considering the returned check, but that, in any event, the amount of the returned check had been credited to Plaintiff, and was not included in the amount of claimed overpayment. (R. at 5-8.) Therefore, because the Appeals Council confirmed that Plaintiff was credited for the returned check, thus resolving the issue, the matter is rendered moot and does not merit further attention.

Plaintiff does not appear to challenge the ALJ's finding that Plaintiff was overpaid DIB payments. Instead, Plaintiff challenges the ALJ's finding that he is at fault for the overpayment, and that he is not entitled to a waiver of recovery of the overpayment. The ALJ found that Plaintiff was at fault for the overpayment because he accepted and used payments which he knew, or could have been expected to know, were incorrect. (R. at 16.) The Court also notes that Plaintiff's arguments are essentially a credibility challenge. As such, the Court will evaluate whether the ALJ properly addressed Plaintiff's credibility.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must

follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

7

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

The ALJ noted that he evaluated Plaintiff's credibility pursuant to the applicable regulations, and found Plaintiff to be not entirely credible. (R. at 15.) Plaintiff testified that he was not aware that he was being overpaid; that he reported "everything [he] did" to Social Security, including "[w]hen [he] worked, where [he] worked, how many hours that [he] worked, how long that [he] worked and everything;" that he did not understand why the SSA waited so long to tell him that he was overpaid; that he could not recall when he was initially approved for disability, or how long he had been receiving payments; that he returned what he believed to be an extra check at some unknown point; that he believed the check was an "extra" because it did not arrive at the usual time of month that he received his payments; that he regularly visited his local SSA office and spoke to SSA personnel to ask questions; that he could not remember when he started working at St. Mary's Hospital, though he believed it was around May 2001; that, before he started working, he "spoke to a lady on the phone" who said "something about a work period…some kind trial work period," but that she did not explain what the trial work period was; that the representative told Plaintiff that he could "go to work as long as you want" and "make as much as you want;" that she said nothing about the length of the trial work period; that Plaintiff knew that he was supposed to report his work activity to the SSA because "if you didn't report your job that your earnings would be affected," but that he did not know that his Social

Security could be reduced if he made "a lot" of money at his job; that he was unaware that there was a link between how much he earned at his job and how much in Social Security benefits he could receive; that he reported his income for all employment; that he brought a paystub to the SSA office for each job he held; that he always does what he is instructed to do and was misled by the SSA representative; and that he is totally dependent upon utilizing his entire income and that it would be extremely difficult if he had to repay the amount owed. (R. at 78-101.)

The ALJ noted that there was no credible evidence that Plaintiff, or his mother (his representative payee), made timely reports to the SSA concerning his work activity. (R. at 16.) With regards to Plaintiff's claims that a SSA representative told him that he "could work as much as he wanted for as long as he wanted," the ALJ noted that such was "so far from an accurate statement of the law that I cannot believe anyone who works for the agency would have said that." (R. at 16.) The ALJ went on to state that it "defies logic that anyone who is receiving Social Security benefits based on a physical or psychiatric inability to work would think that a return to work would not affect one's entitlement to those benefits." (R. at 16.) Indeed, Plaintiff admitted that he knew he had to report that he was working because otherwise his Social Security would be affected. (R. at 91-92.) The ALJ considered whether Plaintiff's mental state[2] could explain such a "massive misconception," but he could not affirmatively conclude one way or the other. (R. at 16.) The ALJ stated that Plaintiff was articulate at the hearing, responded appropriately to questions, and "seemed entirely capable of understanding the simple truth that the government should not be expected to pay disability benefits to people who are able to work." (R. at 16.) Plaintiff's lack of recollection as to when he reported his wages, and the fact

---

[2] Plaintiff suffers from a bipolar, psychiatric condition, and was originally approved for DIB as a result of the disorder. (R. at 14, 48.)

that he had no evidence of doing so, "bolster[ed] the [SSA's] claim that no such reports were received." (R. at 16.)

As the ALJ noted, there is simply no evidence of record that Plaintiff reported his wages before 2005. Plaintiff's allegations that he reported his earnings and submitted paystubs to the SSA are not supported by the evidence of record, as there is no documentation of such in Plaintiff's file. Plaintiff has repeated on several occasions that he does not understand why the SSA did not notify him of the overpayment after only two or three "extra" checks were issued. However, because the SSA had no documentation that Plaintiff was working until 2005, the SSA had no way of knowing that Plaintiff was being overpaid. Also, Plaintiff claimed that he reported when, where, and how many hours he worked at each of his occupations. However, the evidence of record does not demonstrate such cooperation with the SSA. In June 2005, a continuing disability report noted that Plaintiff did not wish to provide much information about either his daily activities or his work activities. (R. at 48-65.) Specifically, Plaintiff reported that he worked at St. Mary's Hospital from 2001 to 2005, but he refused to provide any further information, including his job title or how frequently he worked. (R. at 52, 59-62.) In July 2006, Plaintiff attended a personal conference concerning his request for a waiver of recovery of the overpayment of benefits. (R. at 33-34.) However, it was noted that Plaintiff was "very defensive and aggressive" from the onset of the interview, and that Plaintiff told the SSA representative that he did not owe anything, that they had the wrong person, and that "there could have been someone with his name that work [sic] and earned the presented wages." (R. at 33.) Plaintiff was ultimately escorted out of the SSA office by security after exhibiting what the representative thought to be "disruptive and threatening" behavior. (R. at 33-34.)

Furthermore, though Plaintiff claims that he asks questions when he does not understand something, he apparently did not ask for clarification about the trial work period, though it was discussed with him. (R. at 87-93, 96-97.) The Court also concurs with the ALJ's conclusion that it "defies logic that anyone who is receiving Social Security benefits based on a physical or psychiatric inability to work would think that a return to work would not affect one's entitlement to those benefits." (R. at 16.) Consistent with such a reasonable inference, Plaintiff admitted that he knew that he was required to report that he was working, because if he did not it would affect his Social Security benefits.

Accordingly, the Court recommends a finding that the ALJ's decision to find Plaintiff not entirely credible is supported by substantial evidence. There is no evidence of record that Plaintiff reported his work activities, and, as a result, substantial evidence supports the ALJ's decision that Plaintiff was not without fault in causing or accepting the overpayment of benefits. Because the ALJ found that Plaintiff was not without fault, Plaintiff could not obtain a waiver for recovery of the overpayment. Therefore, the Court recommends that the ALJ's decision be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 13) be DENIED; that Defendant's motion for summary judgment (docket no. 16) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: June 14, 2011
Richmond, Virginia